IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

K.S.[1],

        Plaintiff,

v.                                                    Case No.  20-1253-JWB

ANDREW M. SAUL,
*Commissioner of Social Security*,

        Defendant.

## MEMORANDUM AND ORDER

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income benefits.  The matter is fully briefed by the parties and the court is prepared to rule.  (Docs. 15, 16, 17.)  The Commissioner's decision is REVERSED and REMANDED for the reasons set forth herein.

## I.      Standard of Review

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept to support the conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv), 20 C.F.R. § 416.945. The RFC assessment is used to evaluate the claim at both step four and step five. § 416.920(e), (f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of

performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

## II.    Background and Procedural History

Plaintiff filed an application for supplemental security income benefits, alleging a disability beginning on September 26, 2017, when she was 44 years of age. (Tr. at 220.)[2] Her claim was denied administratively and she then requested an evidentiary hearing before an Administrative Law Judge (ALJ) which was held on May 14, 2019, before ALJ Robert Lynch who presided from Springfield, Missouri. Plaintiff appeared in Kansas City, Missouri, and testified at the hearing. A vocational expert, Terri Crawford, appeared at the hearing. (*Id.* at 15.) The ALJ issued a written opinion denying Plaintiff's application on August 29, 2019. (*Id.*)

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 17.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: obesity, mild degenerative joint disease of the knees; history of compression fracture of thoracic spine and degenerative joint disease; anxiety; major depression disorder; and posttraumatic stress disorder ("PTSD"). (*Id.*) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (*Id.* at 19-20.)

---

[2] Citations to "Tr." refer to Bates page numbers in the administrative transcript. (Doc. 14.)

The ALJ next determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following limitations due to her mental impairments[3]: Plaintiff would need the opportunity to take a brief break every 60 minutes, performed at the workstation or being off task, for a period not to exceed 3 minutes; she is limited to performing work consisting of simple, routine, and repetitive tasks; she must be isolated from the public and no more than occasional and superficial interaction with co-workers and supervisors; the work environment cannot require strict deadlines or fast-paced productions; and any workplace changes must be infrequent and gradually introduced.  (*Id.* at 20.)

In determining Plaintiff's RFC, the ALJ extensively reviewed the medical evidence and Plaintiff's reported symptoms.  The ALJ noted that Plaintiff has complained that she cannot work due to her mental conditions.  She stated that she has very bad depression that makes her sleepy, unwilling to leave the house, unwilling to shower, and socialize.  (*Id.* at 21.)  Her anxiety is increased by people and large crowds.  With respect to Plaintiff's allegations of significant symptoms and limitations, the ALJ determined that while her impairments could reasonably be expected to cause the symptoms she alleges, the statements regarding the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence.  (*Id.*)

The medical records show that Plaintiff has reported psychological symptoms from her mental impairments which include sleeping a lot, crying spells, isolation, difficulty getting along with others, and difficulty with memory and concentration.  Despite these reports, however, the mental status examinations generally show Plaintiff to be alert and oriented, calm, and cooperative. The mental status examinations further describe Plaintiff as exhibiting normal eye contact; linear and coherent thought processes; intact memory; intact attention and concentration; normal insight

---

[3] As Plaintiff does not object to the ALJ's findings regarding her physical limitations, those findings and medical records will not be addressed in this order.

and judgment; and normal language. Plaintiff also denies abnormal or psychotic thoughts. (*Id.* at 23) (citing to medical records).

The ALJ also discussed that Plaintiff's treatment for her mental impairments has generally been conservative and that she has not required frequent psychiatric hospitalizations or continuous inpatient treatment. The ALJ determined that Plaintiff's daily activities were inconsistent with debilitating limitations that would preclude all work. Plaintiff has been able to exercise, take public transportation, drive independently, go to the library, take care of her 11 year-old son, attend school, maintain a relationship, and take her son to the zoo. (*Id.* at 23-24.) The ALJ determined that Plaintiff's conservative treatment and daily activities were not consistent with disabling limitations and that Plaintiff could work within the limitations in the RFC.

There were four medical source statements that were evaluated by the ALJ for their persuasiveness. Dr. Dempsey, the state agency psychological consultant, opined that Plaintiff could perform simple to moderately complex level tasks and interact on a limited basis in non-public settings. The ALJ found that the opinion was persuasive as of the date of the review but determined that the progress notes provided after Dr. Dempsey's review did support greater limitations. Therefore, the ALJ further limited Plaintiff to only simple work that was isolated from the public, only occasional interaction with co-workers and supervisors, no strict deadlines or fast-paced production, and infrequent workplace changes. (*Id.* at 25.) The ALJ found the opinion of Dr. Miller, Plaintiff's treating provider, to be partially persuasive. Dr. Miller opined that Plaintiff had mild to moderate limitations in four areas of mental functioning. The ALJ found that this opinion was consistent with Dr. Dempsey. Dr. Miller further opined that Plaintiff would miss one day of work per month. The ALJ determined that this opinion was inconsistent with Plaintiff's daily activities and the medical record, which fails to document significant, ongoing abnormalities

on mental status examinations that would support that Plaintiff needed to miss one workday per month.  The ALJ further discussed that the opinion was undermined by Dr. Miller's report that Plaintiff did not have any marked limitations.  (*Id.* at 25.)

The ALJ also found that Dr. Seagraves' opinion was partially persuasive.  Dr. Seagraves opined that Plaintiff had mild to moderate limitations in the four areas of mental functioning.  The ALJ found that this portion of the opinion was persuasive.  Dr. Seagraves also opined that Plaintiff was markedly limited in completing a normal workday and that she would be absent four days per month.  The ALJ found that this opinion was inconsistent with the overall medical evidence, Plaintiff's reported daily activities, and Dr. Seagraves' opinions that Plaintiff was only moderately limited in her ability to maintain attention and concentration, maintain regulation attendance, and be punctual.  The ALJ further discussed that the record only shows three visits over a two-month period which did not reflect a longitudinal relationship that would merit a finding that the opinion was more persuasive.  (*Id.* at 26.)

Finally, the ALJ discussed the opinion of Dr. Bongiovani, a state agency psychological consultant.  Dr. Bongiovani opined that there was insufficient evidence in the record to offer an opinion.  The ALJ found the opinion not persuasive.  The ALJ noted that additional evidence had been added to the record since Dr. Bongiovani's review.  (*Id.* at 27.)

In sum, the ALJ determined that Plaintiff had the capacity to perform substantial work within the RFC.  The ALJ further stated that the RFC is supported by the objective medical evidence, Plaintiff's daily activities, the opinions of Dr. Dempsey, and in part by the opinions of Dr. Miller and Seagraves.  (*Id.*)

At step four, the ALJ found Plaintiff was unable to perform her past relevant work.  (*Id.* at 27.)  Finally, at step five, the ALJ found Plaintiff could perform jobs that exist in significant

numbers in the national economy.  Citing the testimony of the vocational expert, the ALJ found Plaintiff could perform the requirements of two unskilled jobs at the light exertional level, including: marker (Dictionary of Occupational Titles [DOT] code 209.587-034; 1,800,000 jobs in the national economy), and nongovernment mail clerk (DOT code 209.687-026; 102,000 jobs in the national economy).

After receiving the denial, Plaintiff requested review of the ALJ's decision.  The Appeals Council denied Plaintiff's request.  Therefore, the decision of the ALJ is final and Plaintiff has now filed this action seeking judicial review.  Plaintiff argues the ALJ erred by forming a mental RFC that is not supported by substantial evidence.  (Doc. 15 at 18.)

### III.    Analysis

Plaintiff argues that the ALJ erred by relying on normal examination findings, conservative treatment, and daily activities to support the mental RFC because, in doing so, he rested on "a mischaracterization of the record and a misunderstanding of [Plaintiff's] mental health impairments."  (Doc. 15 at 19.)  The Commissioner asserts that the ALJ's RFC was reasonable and supported by substantial evidence.

<u>Normal Examination Findings</u>.  Plaintiff first argues that the ALJ's opinion that Plaintiff has the mental RFC to perform simple, routine, repetitive work on a full-time basis is erroneous because the record supports a finding that Plaintiff's mental impairments wax and wane and the ALJ failed to assess this.  The ALJ did discuss that Plaintiff, at times, had a tired and dysphoric affect with depressed and anxious mood.  (Tr. at 23.)  However, the ALJ cited extensive records that showed normal mental status examinations.  Plaintiff concedes that these normal examination findings are in the record but argues that the record also shows Plaintiff regressed other times.  The ALJ did not ignore this evidence in the record but discussed this evidence.  This court cannot

reweigh the evidence which is what Plaintiff is asking the court to do.  The ALJ applied the correct legal standard here and made a decision that was supported by substantial evidence in the record. The mere fact that there is evidence which might support a contrary conclusion is not sufficient to show error on the part of the ALJ.  *Tammy F. v. Saul,* No. 20-1079-JWL, 2020 WL 7122426, at *7 (D. Kan. Dec. 4, 2020); *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007)("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's.")

The record in this case regarding the waxing and waning of symptoms is not comparable to the authority cited by Plaintiff, *Freemyer v. Sullivan*, 723 F. Supp. 1417, 1420 (D. Kan. 1989). (Doc. 15 at 20-21.)  In that case, the court found that the ALJ erred by finding that the plaintiff could engage in gainful employment.   Notably, in *Freemyer*, the plaintiff had frequent hospitalizations and other decompensations which supported a finding that the mental impairments waxed and waned.  723 F. Supp. at 1418-20.  That is not the case here.  Rather, Plaintiff simply points to specific records that support her position while admitting that there are records that show normal mental health examinations.  This is not sufficient.  The ALJ addressed the fact that there were some records showing that Plaintiff did have days with a depressed and anxious mood; however, the ALJ did not find that the medical records supported a disabling impairment.  (Tr. at 23-24.)  The ALJ's findings are supported by substantial evidence and this court cannot reweigh that evidence.  *See Amanda L. A. v. Saul*, No. CV 19-1250-JWL, 2020 WL 3216271, at *5–6 (D. Kan. June 15, 2020).

<u>Conservative Treatment</u>.  Next, Plaintiff argues that the ALJ erred by relying on Plaintiff's conservative treatment.   (Doc. 15 at 21-22.)   While Plaintiff admits that her treatment is

conservative, Plaintiff asserts that this should not support the mental RFC because a long period of treatment actually bolsters her allegations. Plaintiff then cites to SSR 16-3p. The citation, however, does not state that the longevity of treatment mandates a finding that Plaintiff is precluded from work. *See* Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017), 2017 WL 5180304. Moreover, the regulations require the ALJ to consider the nature of Plaintiff's treatment. 20 C.F.R. § 416.929(c)(3)(v). Plaintiff's treatment, which was largely composed of medication and therapy, was conservative. *See Magner v. Colvin*, No. CV 16-1091-JWL, 2017 WL 193213, at *3 (D. Kan. Jan. 18, 2017). Therefore, Plaintiff has not shown that this consideration by the ALJ was erroneous.

> Noncompliance with Medication. Plaintiff further asserts that the ALJ's reliance on noncompliance with treatment and/or medication was "misplaced" because the ALJ cited to treatment notes that were for physical impairments, the ALJ failed to apply the test set forth in *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987), and the ALJ again ignored fluctuation of symptoms.

> In discussing the severity of Plaintiff's mental impairments, the ALJ discussed Plaintiff's conservative treatment and medication history. In doing so, the ALJ stated that Plaintiff "has also at times been noncompliant with treatment and/or medication, with the record noting that she was out of her depression medication." (Tr. at 23.) The ALJ then stated that "when she is compliant, she has at times reported improvement with conservative medication management, reporting that she is doing good and her depression is better." (*Id.*) In conclusion, the ALJ found that Plaintiff's allegations of "debilitating mental health symptoms" were not consistent with the overall evidence. (*Id.*)

Plaintiff argues the ALJ erred in not applying the *Frey* test because the records show that Plaintiff was off of her medication due to lack of coverage or because of a move.   The Commissioner responds that the ALJ's statement regarding medication compliance was not solely to make a credibility determination but to show that Plaintiff's medication was generally effective. (Doc. 16 at 7.)   The Commissioner does not directly address why *Frey* is inapplicable here.   In *Frey*, the Tenth Circuit held that "before the ALJ may rely on the claimant's failure to pursue treatment or take medication as part of his determination of noncredibility, he should consider '(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse.'" *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (quoting *Frey*, 816 F.2d at 517).   The ALJ did not discuss all of the *Frey* factors in his opinion.   Notably, based on the record citations, it does appear that Plaintiff was not on her medications at one point due to being without health coverage.   (Tr. at 1288) (noting that Plaintiff was off of her medication "for a month due to lack of coverage by Medicaid.")

The Tenth Circuit has held that *Frey* must be applied when the ALJ denies benefits and he is evaluating the credibility of a plaintiff's allegations.   *See Potter v. Astrue*, No. CIV.A. 11-1377-JWL, 2012 WL 5499509, at *5 (D. Kan. Nov. 13, 2012) (citing *Goodwin v. Barnhart*, 195 F. Supp. 2d 1293, 1295 (D. Kan. 2002); *Thompson*, 987 F.2d at 1490; *Ragland v. Shalala*, 992 F.2d 1056, 1059–60 (10th Cir. 1993)).   *See also Jelena R. v. Saul*, No. CV 19-1194-JWL, 2020 WL 2101294, at *4 (D. Kan. May 1, 2020).   The test is not required when the treatment was not prescribed and the ALJ is evaluating the attempts plaintiff made to relieve her symptoms.   *Id.* (citations omitted). That is not the case here.   The medication was prescribed to Plaintiff and she had periods in which

she did not take the medication. The ALJ then discusses this noncompliance when evaluating Plaintiff's subjective complaints.

The Commissioner argues that the ALJ did not note this fact "solely to discount Plaintiff's claims" but to show that the "medications were generally effective." (Doc. 16 at 7.) This argument has been rejected recently by Judge Lungstrum.

> [I]n his Brief the Commissioner never addressed Plaintiff's arguments regarding the *Frey* test. Rather, he argued the ALJ found that Plaintiff received medication and attended therapy on a fairly regular basis "and the evidence of record showed that when she was compliant with medication and therapy her mental symptoms improved." (Comm'r Br. 10). Thus, the Commissioner argues specifically that Plaintiff was receiving medication and attending therapy in an attempt to relieve her mental health symptoms and that her condition improved when she was compliant with recommendations and, by negative implication, that it worsened when she was noncompliant. This is precisely the situation to which the Tenth Circuit has found that *Frey* applies yet the Commissioner ignored Plaintiff's argument in that regard.

*Jelena R.*, 2020 WL 2101294, at *4.

"While it may be arguable that *Frey* or the regulation upon which it relied is not applicable in the circumstances of this case, or that *Frey* was wrongly decided, the Commissioner does not make those arguments, and the court may not make them for him." *Id.* Therefore, remand is necessary for the Commissioner to apply the correct legal standard.

<u>Daily Activities</u>. Plaintiff further asserts the ALJ erred in assessing her credibility based on her daily activities. Plaintiff argues that the daily activities do not support a finding that she can engage in full-time competitive work and that the ALJ mischaracterized Plaintiff's ability to perform these activities. Specifically, she argues that she has periods of depression which result in not wanting to leave the house, shower, or socialize. (Doc. 15 at 24.) She further argues that her schooling ended when she had to drop out of school due to difficulty paying attention and remembering homework. (*Id.*) She also asserts that the record shows that she receives assistance

in caring for her son and that she needs reminders to get out of the house, shower, and take medications.

In his decision, the ALJ stated that Plaintiff was able to attend school on campus after the alleged onset date "although she no longer is attending." (Tr. at 24.) The ALJ provides no reason for her departure from school although Plaintiff testified that she was unable to continue due to her depression. (*Id.* at 42, 54, 60.) The medical records also support Plaintiff's testimony that her mental impairments were interfering with her school. (*Id.* at 1297) (stating that her increased anxiety is interfering with school). The ALJ also included Plaintiff's daily activities of taking care of her son in support of a finding that she could engage in gainful employment. In support, the ALJ cited to Plaintiff's function report. (Tr. at 261.) While the function report states that Plaintiff cares for her son by starting his bath, reading to him, and making food, it also states that both her and her son had caseworkers who assisted in the care. (*Id.*) Notably, it states that her son's caseworker takes him places and helps with his disorders. The function report further states that Plaintiff's son assists with chores that Plaintiff is unable to do and that her son will prepare food items on his own. (*Id.*)

The ALJ failed to include these qualifications in his discussion of Plaintiff's daily activities. An ALJ cannot use "mischaracterizations of a claimant's activities to discredit his claims of disabling limitations." *Tate v. Colvin*, No. 15-4870-SAC, 2016 WL 4679942, at *5 (D. Kan. Sept. 7, 2016) (quoting *Sitsler v. Astrue*, 410 Fed. Appx. 112, 117-118 (10th Cir. Jan. 10, 2011)). In response to Plaintiff's arguments, the Commissioner does not address these mischaracterizations. Rather, the Commissioner merely states that "it was reasonable for the ALJ to note the discrepancy between Plaintiff's reports indicating that her symptoms made it hard for her to leave her house or to be around other people...with evidence showing that she enjoyed going

to the library and took her son to the zoo." (Doc. 16 at 7-8.) The Commissioner has wholly failed to address Plaintiff's argument. There does not appear to be a discrepancy in the evidence regarding Plaintiff's inability to attend school or that she has assistance in caring for her son. Rather, the records cited by Plaintiff supported Plaintiff's testimony.

A court does not upset a credibility determination that is closely and affirmatively linked to substantial evidence. Here, however, the ALJ mischaracterized the extent of Plaintiff's daily activities and ignored the qualifications and limitations that she reported. *See Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) ("[T]he ALJ's evaluation of plaintiff's subjective complaints was flawed by his reliance on factors that were not supported by the record and by his failure to consider other factors that were supported by the record."). Moreover, the ALJ used Plaintiff's daily activities in evaluating the opinions of Dr. Seagraves. Specifically, the ALJ found the opinion that Plaintiff had marked limitations in completing a normal workday and workweek and that she would miss four days of work per month to be unpersuasive, in part, due to her daily activities.

Because of the ALJ's error in evaluating Plaintiff's daily activities, the court finds that the credibility findings and the discounting of Dr. Seagraves's opinion because of her daily activities are not supported by substantial evidence.[4] Therefore, this matter must be remanded for the ALJ to consider Plaintiff's daily activities and Dr. Seagraves's opinion based on the record in this matter. If necessary, the ALJ may reopen the proceedings for further hearing.

IV.    **Conclusion**

---

[4] Although the ALJ also discounted Dr. Miller's opinion due to Plaintiff's daily activities, Plaintiff does not raise an error as to the ALJ's discussion of Dr. Miller's opinion.

The Commissioner's decision is REVERSED and REMANDED.  The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED.  Dated this 8th day of June 2021.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE